IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ROBERT BAILEY, ) | Civil Action No. 3:06–3228-MBS-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

On December 2, 2003, Plaintiff applied for DIB. Plaintiff's application was denied initially and on reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). After a hearing held February 28, 2006, at which Plaintiff appeared and testified, the ALJ issued a decision dated May 11, 2006, denying benefits. A vocational expert ("VE") also testified at the hearing. The ALJ found that Plaintiff was not disabled because he could perform his past relevant work as a munitions handler supervisor.

Plaintiff was forty-five years old at the time of the ALJ's decision. He has a high school education plus two years of college and past relevant work as a munitions handler supervisor. Plaintiff alleges disability since August 25, 2003, due to systemic lupus erythematosus (SLE).

The ALJ found (Tr. 20-21):

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's systemic lupus erythematosus and pancreatitis are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The claimant's allegations concerning his impairments and the ability to work are not substantiated by the total evidence of record and not totally credible.

6. The claimant has the following residual functional capacity: I find that the claimant has the residual functional capacity for light work, or work which involves occasionally lifting and/or carrying up to 20 pounds, frequently lifting and/or carrying up to 10 pounds, standing/walking at least 6 hours in an 8 hour day, and no restrictions on sitting.

7. The claimant's past relevant work as a munitions handler supervisor did not require the performance of work-related activities precluded by his residual functional capacity (20 CFR § 404.1565).

8. The claimant's medically determinable impairments do not prevent the claimant from performing his past relevant work.

9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision. (20 CFR § 404.1520(f)).

On September 15, 2006, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on November 13, 2006.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## DISCUSSION

Plaintiff was diagnosed with systemic lupus erythematosus ("SLE")[1] in 1996, but remained on active duty in the United States Air Force until November 2003 when he states he was forced to retire for health reasons. Tr. 338, 347. During July 2002, Plaintiff was admitted to Tuomey Hospital on two occasions (July 18 to 22 and July 28 to 30) for abdominal pain and vomiting. He was diagnosed with suspected mild pancreatitis from an SLE flare-up; mild anemia; micro hematuria

---

[1] SLE is "a chronic, remitting, relapsing, inflammatory, often febrile multisystemic disorder of connective tissue, acute or insidious in onset, characterized principally by involvement of the skin (*cutaneous l. erythematosus*), joints, kidneys, and serosal membranes....It is marked by a wide variety of abnormalities, including arthritis and arthralgias, nephritis, central nervous system manifestations, pleurisy, pericarditis, leukopenia or thrombocytopenia, hemolytic anemia, elevated erthrocyte sedimentation rate, and positive LE-cell preparations." Dorland's Illustrated Medical Dictionary 1072 (30th ed. 2003).

3

and proteinuria probably secondary to lupus; and abdominal pain, nausea, vomiting, and fever secondary to pancreatitis. Plaintiff was referred to Dr. Jim Oates, a rheumatologist, and discharged on July 30, 2002. Tr. 102-104.

A kidney biopsy on August 22, 2002, indicated lupus nephritis (inflammation of the kidney). Tr. 141. Plaintiff was admitted to Tuomey Hospital on September 24, 2002 for gross hematuria (blood in the urine). Tr. 242-244. A CT of Plaintiff's kidneys was unremarkable. Tr. 250. On February 5, 2003, a physician at the VA Hospital noted that Plaintiff was taking Prednisone and had some edema and a "moon face." Tr. 125.

On August 15, 2003, Plaintiff began chemotherapy treatment for his SLE with Dr. Billy Clowney, an oncologist. Plaintiff reported no significant weight loss and no fatigue, weakness, muscle pain, joint pain, or joint swelling. He complained, however, of hand swelling since he had been on Prednisone. Dr. Clowney diagnosed SLE and Plaintiff began a regimen of intravenous Cytoxan therapy. A portacath central venous access to the right internal jugular vein was implanted due to Plaintiff's "poor veins." Tr. 189, 191, 246. On August 29, 2003, Plaintiff reported that he was doing fine and tolerating this therapy. He reported no fatigue, muscle pain, joint pain, joint swelling, intolerance to heat, or significant weight loss. Tr. 186-187. On September 29, 2003, Plaintiff complained of nausea, fatigue, and weakness for approximately four days after receiving chemotherapy. Plaintiff's anti-nausea medication was changed. Tr. 183. Plaintiff reported on October 27, 2003, that his fatigue/weakness had resolved. He complained of swollen extremities. Tr. 180.

On November 21, 2003, Plaintiff reported that he did not have any signs of a SLE flare-up. A physical examination was normal and Dr. Oates noted that Plaintiff's SLE was clinically

4

quiescent. Tr. 139-140. On November 24, 2003, Plaintiff reported to Dr. Clowney that he had no complaints and was doing fine. His liver function tests, however, were still elevated. Tr. 177. On December 3, 2003, Dr. Charles Moss, a urologist, diagnosed Plaintiff with benign hematuria and indicated that Plaintiff should see him on an as-needed basis. Tr. 105.

At follow-up appointments with Dr. Clowney on December 23, 2003 and January 23, 2004, Plaintiff reported that he was doing fine and had no fatigue, weakness, fever, skin lesions, hematuria, joint pain, or intolerance to heat. His liver function test levels were still elevated. Tr. 171, 174.

On January 9, 2004, Dr. Oates noted that Plaintiff had fevers and chills the prior Monday night, but currently had no overt signs of SLE. Tr. 137-138. On February 4, 2004, Dr. Oates wrote a letter in which he opined that Plaintiff would not be able to function reliably in a working environment. Tr. 136. Plaintiff reported to Dr. Oates on February 6, 2004, that he had nausea for seven days after his Cytoxan treatment. Dr. Oates noted that Plaintiff was examined by Dr. Stuart regarding Plaintiff's pancreatitis. Tr. 134. He indicated that Plaintiff's SLE was clinically quiescent on March 5, 2004. Tr. 133. On March 11, 2004, an ultrasound indicated that Plaintiff's pancreas and right kidney were normal. Tr. 117.

On April 7, 2004, Dr. Clowney noted that Plaintiff's SLE was stable, but Plaintiff continued to have elevated liver functions. Tr. 168-169. On May 14, 2004, Plaintiff complained to Dr. Oates of chills, nausea, not sleeping, abdominal pain that was worse after eating, and diarrhea. His wife stated that she believed Plaintiff was depressed. Tr. 130-131. Dr. Oates noted that Plaintiff's SLE was inactive on June 25, 2004. Tr. 129. Plaintiff reported to Dr. Clowney that he was doing fine with no fatigue, weakness, fever, skin lesions, joint pain, or intolerance to heat on July 30, 2004.

It was noted, however, that Plaintiff was going to have a liver biopsy due to elevated liver function tests.  Tr. 166-167.

On January 7, 2005, Dr. Oates noted that Plaintiff's SLE with vasculitis and nephritis was clinically stable and Plaintiff had no side effects from his medication except for mild nausea.  Tr. 289.  On May 20, 2005, Plaintiff reported to Dr. Oates that he had shortness of breath with singing and walking.  Dr. Oates assessed clinically stable SLE with vasculitis and nephritis.  Tr. 284-285.

On June 29, 2005, Dr. Patrick Mardesich, an ophthalmologist, noted that Plaintiff had lupus without ophthalmic manifestation and Plaintiff was doing well from an ophthalmic standpoint.  Tr. 270.  On September 29, 2005, Plaintiff reported to Dr. Oates that he had a recent abdominal SLE flare with pain and nausea that had resolved in two to three days with bed rest and a strict diet.  Tr. 281-282.  Dr. Oates noted that Plaintiff had no signs of a lupus flare-up and no joint swelling or stiffness.  Tr. 281.

A treatment note from the 20th Medical Group dated October 26, 2005 reflects that Plaintiff complained of a mismatch of his sleep/wake schedule and abdominal tenderness.  Lexapro was prescribed for an adjustment disorder with anxiety.  Tr. 300.  On December 12, 2005, Plaintiff's blood pressure medication was refilled by this group.  Tr. 295.

On February 18, 2004, Dr. Charles Jones, a State agency medical consultant, reviewed Plaintiff's records at the request of the Commissioner and completed a Physical Residual Functional Capacity Assessment form.  He opined that Plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday.  Tr. 109.  On September 7, 2004, Dr. W. B. Hopkins, a State agency medical consultant, reviewed Plaintiff's records at the request of the Commissioner and

completed a Physical Residual Functional Capacity Form. He opined that Plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. Tr. 231.

Plaintiff alleges that: (1) the ALJ erred by not finding that Plaintiff met or equaled one of the listings of impairments ("Listings"), 20 C.F.R. Pt. 404, Subpt. P, App. 1; (2) the ALJ erred by not evaluating this case under SSR 06-3p as to a finding of disability by the Veteran's Administration ("VA"); (3) the ALJ erred by not giving controlling weight to Plaintiff's treating sources; and (4) the ALJ erred in finding that Plaintiff could return to his past relevant work. The Commissioner contends that the ALJ's decision is supported by substantial evidence.[2]

    A.    Listings

Plaintiff alleges that he meets or equals the listings at § 14.02B and/or § 5.05F3. The Commissioner contends that Plaintiff fails to show that he meets all of the specified criteria of these listings.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also have the findings shown in the listing of that impairment. 20 C.F.R. § 404.1525(d); see Bowen v. Yuckert, 482 U.S.

---

[2]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

137, 146 and n. 5 (1987)(noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. Medical equivalence can be found if the impairment(s) is/are at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 404.1526(a). A claimant has to establish that there was a "twelve-month period...during which all of the criteria in the Listing of Impairments [were] met." DeLorme v. Sullivan, 924 F.2d 841, 847 (9th Cir. 1991)(finding that the claimant's back impairment did not meet the requirements of section 1.05C; remanded on other grounds).

Here, the ALJ specifically stated that Plaintiff's severe impairments did not meet or equal one of the Listings. Tr. 16, 20. Additionally, the State agency medical consultants signed Disability Determination Transmittal forms (Tr. 30-31), indicating they considered the question of medical equivalence, but found Plaintiff did not meet or equal one of the Listings. See SSR 96-6p (signature of a State agency medical consultant on the Disability Determination Transmittal form ensures consideration was given to whether a Listing is met or equaled).

The Listing at 14.02B requires:

14.02 Systemic lupus erythematosus. Documented as described in 14.00B1, with:

    A. One of the following:

> 1. Joint involvement, as described under the criteria in 1.00; or
> 2. Muscle involvement, as described under the criteria in 14.05; or
> 3. Ocular involvement, as described under the criteria in 2.00ff; or

> 4. Respiratory involvement, as described under the criteria in 3.00ff; or
> 5. Cardiovascular involvement, as described under the criteria in 4.00ff or 14.04D; or
> 6. Digestive involvement, as described under the criteria in 5.00ff; or
> 7. Renal involvement, as described under the criteria in 6.00ff; or
> 8. Hematologic involvement, as described under the criteria in 7.00ff; or
> 9. Skin involvement, as described under the criteria in 8.00ff; or
> 10. Neurological involvement, as described under the criteria in 11.00ff; or
> 11. Mental involvement, as described under the criteria in 12.00ff.
> Or
> B. Lesser involvement of two or more organs/body systems listed in paragraph A, with significant, documented, constitutional symptoms and signs of severe fatigue, fever, malaise, and weight loss. At least one of the organs/body systems must be involved to at least a moderate level of severity.

Section 14.00B requires:

> A longitudinal clinical record of at least 3 months demonstrating active disease despite prescribed treatment during this period with the expectation that the disease will remain active for 12 months is necessary for assessment of severity and duration of impairment.

Here, Plaintiff fails to show that he met or equaled the Listing at 14.00B because he has not shown that his SLE was active for at least three months. Further, Plaintiff fails to show signs of severe fatigue, fever, and malaise.

Plaintiff claims he meets the Listing at 5.05F3 because he had a liver biopsy on July 7, 2004 which showed "steatchepatitis with Grade I Inflammatory activity and stage 2 fibrosis" which he states was submitted in conjunction with his exhibit 12F, but was never put into the transcript.[3] He also claims that hepatic cell inflammation as shown by an abnormal prothrombin time and repeated

---

[3]"Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the [Commissioner's] decision is supported by substantial evidence." Huckabee v. Richardson, 468 F.2d 1380, 1381 (4th Cir. 1972); see also 42 U.S.C. § 405(g).

9

abnormalities of enzymes indicative of hepatic dysfunction. The Commissioner contends that even if the liver biopsy were a part of the record, Plaintiff fails to show that he met or equaled the listings because he did not have repeated abnormalities of his prothrombin time.

At the time of the ALJ's decision, the Listing at 5.05F3 required:

5.05 Chronic liver disease (e.g., portal, postnecrotic, or biliary cirrhosis; chronic active hepatitis; Wilson's disease). With:
*****
F.  Confirmation of chronic liver disease by liver biopsy (obtained independent of Social Security disability evaluation) and one of the following:
*****
3. Hepatic cell necrosis or inflammation, persisting for at least 3 months, documented by repeated abnormalities of prothrombin time and enzymes indicative of hepatic dysfunction.

Although Plaintiff has produced evidence of repeated abnormalities of hepatic dysfunction, he has only shown that his prothrombin time was abnormal on one occasion, and thus he fails to show that he met or equaled the Listing at 5.05F3.

B.  VA Determination

Plaintiff alleges that the ALJ and Appeals Council failed to properly take into consideration a finding of disability by the VA, specifically in light of SSR 06-03p. The Commissioner contends that Plaintiff's disability rating was properly considered.

SSR 06-03p provides:

Our regulations at 20 CFR 404.1527(e) and 416.927(e) make clear that the final responsibility for deciding certain issues, such as whether you are disabled, is reserved to the Commissioner (see also SSR 96-5p, "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner"). However, we are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies (20 CFR 404.1512(b)(5) and 416.912(b)(5)). Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.

*****

> Because the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner, we are not bound by disability decisions by other governmental and nongovernmental agencies. In addition, because other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency. However, the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases.

Here, Plaintiff did not submit a copy of VA's disability decision, but submitted a portion of a letter from the VA's Vocational Rehabilitation and his own testimony. The letter provides that Plaintiff could not receive training for employment through Vocational Rehabilitation and Employment Services based in part on Plaintiff's "service connected disability rating of 100% for Lupus and 0% [for] chronic pancreatitis and chronic joint pain that are associated with the Lupus condition." Tr. 101. Plaintiff testified that in November 2003 he was rated as sixty percent disabled by the VA and the rating was raised to one hundred percent in April 2004. Tr. 348-349.

Contrary to Plaintiff's argument, the ALJ properly considered Plaintiff's assertion that he had been rated as 100% disabled by the VA and gave his reason for rejecting the disability rating. The ALJ wrote:

> According to a letter from Vocational Rehabilitation, the claimant has a service connected disability rating of 100% for lupus and is not eligible for training through their agency (Exhibit 7E). This finding has been considered, along with all other evidence of record in this case. The laws defining "disability" for military disability and veteran's programs are based on a percentage schedule for rating disabilities. That definition is not consistent with the definition of "disability" in the Social Security Act, and the determinations of the Department of the Air Force and the Department of Veteran's Affairs are not binding on me in applying the law governing this claim (20 [C.F.R. §] 404.1504).

11

Tr. 18-19.[4]

    C.    <u>Treating Physician</u>

Plaintiff argues that the ALJ erred in discounting the opinion of his treating physician, Dr. Oates. On February 4, 2004, Dr. Oates wrote:

> [Plaintiff] has the diagnosis of lupus. His disease is manifested by 1) serological parameters, including a positive ANA and double stranded DNA as well as low complement levels indicating disease activity, and 2) clinical disease, manifested by joint pains and lupus nephritis. The most severe manifestation of his disease currently is an active and ongoing uncontrolled pancreatitis that persists despite monthly chemotherapy with cyclophosphamide. This is a presumptive diagnosis because he has also had hemorrhagic cystitis, which is a manifestation of vasculitis involving abdominal vasculature. All of these manifestations are severe manifestations of lupus and are associated with poor prognosis. Because of the severity of his disease and the monitoring necessary for any potential complications from his therapy I would strongly recommend that you give [Plaintiff] full disability at this time. He is undergoing rather aggressive therapy and still has signs of disease activity; therefore, I do not anticipate in the near future that he will be able to function reliably in a working environment.

Tr. 136. Plaintiff appears to argue that controlling weight should have been given to this opinion because Dr. Oates is a specialist in the field of SLE, he had an ongoing treatment relationship with Plaintiff, his opinion is supported by objective medical testing, and his opinion is supported by the medical notes of other treating physicians and other medical sources. The Commissioner contends that the ALJ properly discounted Dr. Oates' opinion because it was not supported by Dr. Oates' treatment notes, Dr. Oates placed no limitations on Plaintiff's activities, no other physician opined that Plaintiff was disabled, and the record as a whole indicates limited complaints from Plaintiff.

---

[4]Plaintiff also appears to argue that the ALJ failed to properly follow SSR 06-03p in regard to the opinions of non-acceptable medical sources. He, however, has not identified which opinion(s) were not followed (and although there are treatment notes, none of these providers appear to have made an opinion as to disability or as to Plaintiff's residual functional capacity), making such an analysis impossible.

Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1988), and Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986).  In those cases, the court emphasized the importance of giving great weight to the findings of the plaintiff's treating physician. See also Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983).  The court in Mitchell also explained that a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."  An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled.  DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2).  The Court in Craig found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589.

The ALJ's decision to discount Dr. Oates' opinion is not supported by substantial evidence. The ALJ does not appear to have fully considered the objective medical evidence indicating liver problems; indications of pancreatitis, nephritis, and vasculitis; and the treatment notes of Dr. Clowney concerning Plaintiff's chemotherapy . Dr. Oates referred Plaintiff to a gastroenterologist for consult due to "SLE, hemorrhagic cystitis, pancreatitis, increased amylase & lipase, GGT, AST/ALT." Tr. 163.  As noted above, Plaintiff was referred for a liver biopsy due to elevated liver

13

function tests. Although the ALJ noted that there were times when Plaintiff was not experiencing SLE flares, there are multiple blood tests indicting SLE complications. Additionally, Plaintiff reported complications from SLE and from medications, including swelling, nausea, the inability to eat certain foods, and fatigue on a number of occasions. This action should be remanded to the Commissioner to consider Dr. Oates' opinion in light of all the evidence.

        D.      <u>Past Relevant Work</u>

Plaintiff contends that the ALJ erred in finding that he could perform his past relevant work as a munitions handler supervisor because the VE did not specify when such work was at a sedentary level and the Dictionary of Occupational Titles ("DOT") lists the job as medium work. The Commissioner contends that the ALJ properly determined that Plaintiff could perform his past relevant work as he performed it because Plaintiff testified that he performed his past relevant work in a sedentary manner and the VE testified that Plaintiff performed his past relevant work in a variety of settings, several of which appeared to be at the sedentary level.

At the fourth step of the disability inquiry,[5] a claimant will be found "not disabled" if the claimant is capable of performing his or her past relevant work either as he or she performed it in the past or as it is generally required by employers in the national economy. SSR 82-61. The claimant bears the burden of establishing that he or she is incapable of performing his or her past

---

[5]In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. <u>See</u> 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. <u>See</u> <u>id.</u>

relevant work.  See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).

The ALJ's determination that Plaintiff could perform his past relevant work as a munitions handler supervisor is not supported by substantial evidence.  It is unclear from the record whether Plaintiff actually performed this job at a light or sedentary level.  Plaintiff, on his disability form, does not even appear to have provided the requirements for his last two jobs which appears to correlate with the job or jobs the ALJ stated Plaintiff could still perform.  See Tr. 72-78.  It is unclear from the VE's testimony when and/or which of Plaintiff's job(s) as a munitions handler supervisor were at the sedentary level and which were at the very heavy level.  The VE testified that:

> several of the settings [of Plaintiff's job(s)] appear to be at the sedentary level and at least one of them at the very heavy level of exertion.  And depending on the particular location, that would seem reasonable, but I'm certainly satisfied that this is skilled work.

Tr. 359.  Additionally, Plaintiff claims that his past relevant jobs required him to be outdoors, yet his physician instructed him to stay out of the heat and sun (see Tr. 103).  Plaintiff also testified that he was on "profile" in his later jobs because he was unable to perform certain functions due to his impairments.  See Tr. 340-341.  It is unclear from the testimony whether the jobs Plaintiff performed were at a light or sedentary work or if Plaintiff was able to have others perform certain functions of these jobs for him on a temporary basis.  The ALJ also has not shown that Plaintiff could do his past relevant work as it is generally performed in the economy.  The DOT for the job of a munitions handler supervisor lists the requirements for medium work (see DOT 922.137-018), yet the ALJ found that Plaintiff could only perform light work.

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to properly evaluate the opinion of Plaintiff's treating physician (Dr. Oates) in light of all of the evidence, to determine if Plaintiff can perform his past relevant work, and to continue the sequential evaluation process if necessary.

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further administrative action as set out above.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

February 25, 2008
Columbia, South Carolina